**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

TELEMATCH, INC.,

       *Plaintiff*,

v.

UNITED STATES DEPARTMENT OF
AGRICULTURE,

       *Defendant*.

Civil Action No. 19-2372 (TJK)

## <u>MEMORANDUM OPINION</u>

Telematch, Inc. (d/b/a Farm Marked iD) ("FMID"), collects, maintains, and analyzes

agricultural data from various sources, including the federal government.  It has regularly

submitted FOIA requests for USDA records for over a decade.  From December 2018 to March

2019, FMID submitted seven FOIA requests to USDA for specific records.  These seven requests

sought records that include what USDA calls "Farm Numbers," "Tract Numbers," and

"Customer Numbers."  USDA's FOIA office denied those requests either in part or in full.  Not

satisfied with the documents USDA did provide, FMID administratively appealed, but that

process blew past FOIA's statutory deadlines.  So FMID sued in this Court.  FMID seeks release

of the remaining records they requested, as well as relief from USDA's alleged policy of

delaying its processing of FOIA requests.  FMID also alleges that a now-superseded USDA

FOIA regulation contradicts the FOIA statute and is arbitrary and capricious under the

Administrative Procedure Act.  The parties have cross-moved for summary judgment.  For the

reasons explained below, including that the records at issue are exempt from disclosure, the

Court will grant USDA's motion and deny FMID's.

I.    **Background**

A.    **The Records at Issue**

Although FMID's requests, detailed below, encompass various types of files maintained by the Department of Agriculture (USDA), the dispute between the parties—at least as to the question of whether USDA has improperly withheld any records—boils down to its treatment of Farm Numbers, Tract Numbers, and Customer Numbers.  USDA creates Farm Numbers and Tract Numbers and assigns them to land enrolled in USDA programs.  ECF No. 9-2 ("Pl.'s Stmt. Facts") ¶ 5; ECF No. 13-2 ("Def.'s Stmt. Facts") ¶ 22.  As part of its internal operations, USDA creates a map of enrolled land that outlines farm or ranch boundaries with acreage figures. Def.'s Stmt. Facts ¶ 23.  USDA then creates digitally drawn polygons on aerial photos or maps to depict these boundaries.  *Id.*  Farm and Tract Numbers correspond to these polygons.  *Id.*  The Farm Number refers to the entire farm, and Tract numbers refer to the tract units of contiguous land within that farm.  *Id.*

USDA uses Farm and Tract Numbers in various ways.  USDA may use the numbers, for example, to identify the number of acres planted with a particular crop in a farm program.  *Id.* ¶ 24.  For other programs, USDA may use the numbers to identify the location of conservation practices or geographical features.  *Id.*

Customer Numbers are unique identifiers USDA assigns to individuals or entities in USDA databases.  *Id.* ¶ 37; Pl.'s Stmt. Facts ¶ 5.  USDA uses the numbers to identify program participants and to help provide and administer farm loans, crop insurance, and disaster assistance compensation.  Pl.'s Stmt. Facts ¶ 5.  A Customer Number, like Farm and Tract Numbers, can be used to connect other USDA data.  *Id.* ¶¶ 5–6; Def.'s Stmt. Facts ¶¶ 27, 34.

B.      **Plaintiff's FOIA Requests**

1.      **Request 2019-FSA-01467-F**

FMID submitted FOIA request 2019-01467-F in December 2018 for two Farm Reconstitution data files consisting of Farm Numbers and Customer Numbers, as well as state and county codes.  Def.'s Stmt. Facts ¶¶ 1–3; ECF No. 13-3 ("Buchan Decl."), Ex. 4.  A reconstitution occurs when a farm or tract is either divided or combined with another farm or tract.  Def.'s Stmt. Facts ¶ 2.  Farm Reconstitution data files show which farms or tracts underwent reconstitution and provide information on the newly constituted farms or tracts.  *Id.*; Pl.'s Stmt. Facts ¶ 16.

In March 2019, USDA provided the statistical version of the file that contained the State Code, County Code, Reconstitution Date, and Reconstitution Type.  Def.'s Stmt. Facts ¶ 3.  But USDA withheld the Parent Farm Number, Resulting Farm Number, Customer Number, and Resulting Customer Number as exempt under FOIA Exemptions 3 and 6.  *Id.*

2.      **Request 2019-FSA-01492-F**

FMID submitted FOIA request 2019-FSA-01492-F in December 2018.  Def.'s Stmt. Facts ¶ 4.  The request sought the 2018 Conservation Reserve Program (CRP) Active Contract Names and Addresses file.  *Id.*; Buchan Decl., Exs. 6, 7.  In March 2019, citing FOIA Exemptions 3 and 6, USDA provided a statistical file with no matching name and address information.  Def.'s Stmt. Facts ¶ 5.  USDA also provided Name, Address, and actual CRP Payment amount information.  *Id.* ¶ 6; Buchan Decl., Exs. 6.

3.      **Request 2019-FSA-01497-F**

FMID submitted FOIA request 2019-FSA-01497-F in December 2018 for the Business Party Share File.  Def.'s Stmt. Facts ¶ 7.  The Business Party Share File shows all business

relationships within a farming operation by linking Parent and Member Tax-ID or Core

Customer ID, which are distinct from Customer Numbers. *Id.* ¶¶ 8, 37–38.

In March 2019, USDA instead provided the Business Party Statistical Share File. *Id.* ¶ 9.

The Statistical file does not include Parent Customer Number and Member Customer Numbers.

Pl.'s Stmt. Facts ¶ 43. USDA did not explain its decision to provide the statistical file rather than

the requested file. *Id.* ¶ 45.

### 4. Request 2019-FSA-01539-F

FMID submitted FOIA request 2019-FSA-01539-F for the 2018 Direct and

Countercyclical Payment Program (DCP) Tract Crop File in December 2018. *Id.* ¶ 46. The DCP

Tract Crop File, which USDA now calls the Farm Tract File, contains records that include Farm

Numbers and Tract Numbers. *Id.* ¶ 47–48; Def.'s Stmt. Facts ¶ 11. In April 2019, citing 7

U.S.C. § 8791 ("Section 8791"), USDA instead provided the Farm Tract Crop Statistical File,

which does not include Farm and Tract Numbers. Def.'s Stmt. Facts ¶ 12; Buchan Decl., Ex. 11.

### 5. Request 2019-FSA-01562-F

FMID submitted FOIA request 2019-FSA-01562-F for the 2018 Agricultural Risk

Coverage (ARC) and Price Loss Coverage (PLC) Program Election files, including all

constituent data elements, in December 2018. Pl.'s Stmt. Facts ¶ 56. This file contains State

Code, County Code, Customer Number, Farm Number, Crop Name and Program Election data.

Def.'s Stmt. Facts ¶ 14. The file shows how each producer elected to enroll their land in specific

programs. *Id*.

In March 2019, USDA responded by noting that it identified two responsive records, the

"Name and Address" and "Crop Election" Files. Buchan Decl., Ex. 13. The Name and Address

File contains the State Code, County Code, and Customer Number fields. Buchan Decl. Ex. 13.

The Crop Election File contains the State Code, County Code, Customer Number, Farm Number,

Crop Code, and Program Election fields. *Id.* USDA withheld both files, citing FOIA

Exemptions 3 and 6, but asked whether it could meet FMID's needs by providing the statistical

version of the Crop Election File, which does not include Customer Numbers or Farm Numbers.

*Id.* USDA instructed FMID to contact it immediately should the Statistical file meet FMID's

needs and committed to reopen the FOIA request and process it. *Id.* There is no Statistical

version of the Name and Address File. *Id.*

### 6. Request 2019-FPAC-BC-03020-F

FMID submitted FOIA request 2019-FPAC-BC-03020-F for the 2018 Farm Producer

File including the State and County Codes, Status Code, FSA Customer Number, Farm Number,

and the Reconstitution Pending Indicator in March 2019. Def.'s Stmt. Facts ¶ 16. On March 28,

2019, USDA noted that FMID had already requested the 2018 Farm Producer File and that the

agency had provided the 2018 Farm Producer Statistical File, which included the State and

County Codes, Status Code, and the Reconstitution Pending Indicator. Buchan Decl., Ex. 15.

USDA continued to withhold the FSA Customer Numbers and Farm Numbers in full, citing

FOIA Exemptions 3 and 6. *Id.*

### 7. Request 2019-FPAC-BC-03064-F

FMID submitted FOIA request 2019-FPAC-BC-03064-F in March 2019 for 2018

Compliance Data, including State and County Codes, Status Code, Farm Number, Tract Number,

Field Number, Subfield Number, Planting Period Code, Crop Field Determined Quantity,

Determined Acreage Indicator, Official Measurement Code, Certification Date, Plant Pattern

Type Code, Concurrent Planting Code, Disapprove Acre Indicator, Perennial Crop Year Expired,

NAP Unit number, Creation Date, and Last Changed Date information. Def.'s Stmt. Facts ¶ 19.

In April 2019, USDA provided the 2018 Compliance Data Statistical File which did not include the Farm Number, Tract Number, or Subfield Number, citing Exemption 6 and Section 8791.  *Id.* ¶ 21.

### C.      Procedural History

FMID administratively appealed all seven FOIA requests in May 2019.  Pl.'s Stmt. Facts ¶ 100.  Throughout the summer, FMID sought status updates on its pending appeals.  *Id.* ¶¶ 106–110.  Unsatisfied with USDA's response to FMID's inquiries, and because USDA had not adjudicated FMID's appeal, FMID sued in August 2019.  *Id.* ¶ 112.

FMID alleges three counts.  In Count I, FMID alleges USDA violated FOIA by unlawfully withholding Customer Numbers, Farm Numbers, Tract Numbers, and all associational data between those data figures.  ECF No. 1 ("Compl.") ¶¶ 64–69.  In Count II, FMID alleges USDA is violating FOIA by following an unlawful policy or practice of systematically failing to adhere to FOIA deadlines.  *Id.* ¶¶ 70–75.  In Count III, FMID alleges USDA violated the Administrative Procedure Act (APA) by promulgating an earlier version of 7 C.F.R. § 1.14(a).  *Id.* ¶¶ 76–84.

Pending before the Court are cross-motions for summary judgment.  ECF No. 9-1 ("Pl.'s MSJ Br."); ECF No. 13 ("Def.'s MSJ Br."); ECF No. 14 ("Def.'s Opp'n"); ECF No. 15 ("Pl.'s Reply"); ECF No. 16 ("Pl.'s Opp'n"); ECF No. 20 ("Def.'s Reply").  FMID argues that USDA improperly invoked Exemptions 3 and 6 to withhold the information at issue.  In FMID's view, Section 8791, the statute USDA cites to invoke Exemption 3, does not apply because USDA— not agricultural producers or owners—creates the Customer, Farm, and Tract Numbers.  Pl.'s MSJ Br. at 12–14.  Moreover, according to FMID, Section 8791 does not apply because the requested data are not "geospatial information" precluded from disclosure by law.  *Id.* at 14–20. As for Exemption 6, FMID contends that the requested records are not covered under the

exemption because they are not "similar" files to medical or personnel files, there is no substantial privacy interest at stake, and the public interest in obtaining the requested information outweighs any purported privacy concerns.  *Id.* at 20–29.  FMID also alleges that USDA delays responding to FOIA requests and in adjudicating FOIA appeals, and that this shows that the agency has a policy or practice of disregarding FOIA deadlines.  *Id.* at 32.  And as for FMID's APA challenge, the parties now agree that FMID has suffered no injury from the regulation because USDA is not asserting failure to exhaust administrative remedies as a defense to this lawsuit.  Pl.'s Opp'n at 25; Def.'s Reply at 8.  In response to FMID's exemption and policy or practice arguments, USDA asserts that it properly invoked Exemptions 3 and 6 and that it has no policy or practice of violating FOIA's timeliness requirements.  Def.'s MSJ Br. at 5–14.

## II.    Legal Standard

"[T]he vast majority of FOIA cases can be resolved on summary judgment."  *Brayton v. Office of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011).  "Summary judgment is appropriately granted when, viewing the evidence in the light most favorable to the non-movants and drawing all reasonable inferences accordingly, no reasonable jury could reach a verdict in their favor."  *Lopez v. Council on Am.–Islamic Relations Action Network, Inc.*, 826 F.3d 492, 496 (D.C. Cir. 2016).  "The evidence presented must show 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Id.* (quoting Fed. R. Civ. P. 56(a)).

In this district, a party opposing summary judgment must accompany its opposition with "a separate concise statement of genuine issues."  LCvR 7(h)(1).  "In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."  *Id.*  "Requiring strict compliance with the local

rule is justified both by the nature of summary judgment and by the rule's purposes." *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 150–51 (D.C. Cir. 1996) (citation omitted).  FMID did not attach a separate statement of genuine issues to its opposition to USDA's motion for summary judgment.  The Court therefore assumes FMID admits the facts as stated in USDA's statement of material facts.

## III.  Analysis

### A.  USDA's Withholding of Farm and Tract Numbers under FOIA Exemption 3 and Customer Numbers under Exemption 6 (Count I)

Congress enacted FOIA "to facilitate public access to Government documents."  *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991).  The statute was "designed to 'pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny.'"  *Id.* (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)).  "FOIA 'mandates that an agency disclose records on request, unless they fall within one of nine exemptions.'"  *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 777 F.3d 518, 522 (D.C. Cir. 2015) (quoting *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011)).  A court applying FOIA "must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure.'"  *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting *Ray*, 502 U.S. at 173).  Thus, the FOIA exemptions must be "narrowly construed."  *Rose*, 425 U.S. at 361.

The agency has the burden to justify its withholding of any documents.  *Ray*, 502 U.S. at 173.  "The agency may carry that burden by submitting affidavits that 'describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'"  *Citizens for Responsibility &*

*Ethics in Washington (CREW) v. U.S. Dep't of Justice*, 746 F.3d 1082, 1088 (D.C. Cir. 2014)

(quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)).

### 1.    Farm and Tract Numbers – Exemption 3

FOIA's Exemption 3 exempts records that are "specifically exempted from disclosure by

statute" if, relevant here, the statute "requires that the matters be withheld from the public in such

a manner as to leave no discretion on the issue."  5 U.S.C. § 552(b)(3)(A)(i).  In applying

Exemption 3, a court first determines whether the statute is a "statute of exemption as

contemplated by exemption 3" and, second, whether "the withheld material satisf[ies] the criteria

of the exemption statute."  *Fitzgibbon v. C.I.A.*, 911 F.2d 755, 761 (D.C. Cir. 1990) (citing *C.I.A.*

*v. Sims*, 471 U.S. 159, 167 (1985)).

USDA points to Section 8791 as an applicable withholding statute.  That provision states

that "the Secretary, any officer or employee of the Department of Agriculture, or any contractor

or cooperator of the Department, shall not disclose (A) information provided by an agricultural

producer or owner of agricultural land concerning the agricultural operation, farming or

conservation practices, or the land itself, in order to participate in programs of the Department;

or (B) geospatial information otherwise maintained by the Secretary about agricultural land or

operations for which information described in subparagraph (A) is provided."  7 U.S.C.

§ 8791(b)(2)(A), (B).  The Court agrees that, based on "the language of the statute on its face,"

Section 8791 is a withholding statute, a point FMID does not contest.  *Zanoni v. U.S. Dep't of*

*Agric.*, 605 F. Supp. 2d 230, 236 (D.D.C. 2009); Pl.'s MSJ Br. at 10.  *See also Central Platte*

*Nat. Res. Dist. v. U.S. Dep't of Agric.*, 643 F.3d 1142, 1147–48 (8th Cir. 2011) (holding same).

The remaining issue under Exemption 3 is whether the requested information falls within the

scope of either Subparagraph (A) or (B).

As explained below, the Court holds that Farm and Tract Numbers constitute "geospatial information otherwise maintained by the Secretary about agricultural land or operations" and that therefore, under Subparagraph (B), they are prohibited from disclosure.[1] 7 U.S.C. § 8791(b)(2)(B).

Section 8791 does not define "geospatial information." "In the absence of an express definition, [a court] must give a term its ordinary meaning." *Petit v. U.S. Dep't of Educ.*, 675 F.3d 769, 781 (D.C. Cir. 2012). And courts look to the ordinary meaning of a statute "at the time Congress enacted the statute." *Wisc. Cent. Ltd. v. U.S.*, 138 S. Ct. 2067, 2070 (2018) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)). While general-usage dictionaries "cannot invariably control [ ] consideration of statutory language," they are a good place to start. *Am. Coal Co. v. Fed. Mine Safety & Health Review Comm'n*, 796 F.3d 18, 25 (D.C. Cir. 2015); *see Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 566–67 (2012) (looking first to dictionaries to determine ordinary meaning). Congress included Section 8791 in the Food, Conservation, and Energy Act of 2008, Pub. L. 110-234, 122 Stat. 923 (2008), so the Court looks to dictionaries from around that time. One defines "geospatial" as "relating to or denoting data that is associated with a particular location." New Oxford American Dictionary 727 (3d ed. 2010). Another defines the term as "[o]f or relating to analysis of geographical data from multiple sources and technologies, using statistical methods and often resulting in computer visualization of locations under study." New American Dictionary 736 (5th ed. 2011).

---

[1] Thus, the Court need not reach the question of whether Subparagraph (A) provides a justification for withholding the Farm and Tract Numbers. The Court is skeptical that it does. As FMID points out, Farm and Tract Numbers are not information provided by agricultural producers or owners of agricultural land, as required by the statute. Pl.'s Opp'n at 6.

FMID suggests other definitions, as well.  It identifies 2008 supplemental guidance to OMB Circular A-16 (2002) that defines "geospatial information" as "[i]nformation concerning phenomena implicitly or explicitly associated with a location relative to the Earth's surface." Pl.'s MSJ Br. at 18–19 (citing Federal Enterprise Architecture Geospatial Profile, ver. 2, appendix B (Glossary of terms) (2008)); *see also* Federal Geographic Data Committee, *Lexicon of Geospatial Terminology*, fgdc.gov/policyandplanning/a-16/lexicon-of-geospatial-terminology (last visited Oct. 22, 2020) (citing same).  The same document defines "geospatial data" as "[d]ata with implicit or explicit reference to a location relative to the Earth's surface; Spatial data are geographically referenced features that are described by geographic positions and attributes in an analog or computer-readable (digital) form."  Pl.'s MSJ Br. at 18–19 (citing Federal Enterprise Architecture Geospatial Profile, ver. 2, appendix B (Glossary of terms) (2008)); *see also* Federal Geographic Data Committee, *Lexicon of Geospatial Terminology*, fgdc.gov/policyandplanning/a-16/lexicon-of-geospatial-terminology (last visited Oct. 22, 2020) (citing same).

FMID also argues that a 2008 USDA memorandum restricted the definition of "geospatial information" to "photographs when they contain, or are associated with, other data depicting or identifying attributes of the land, such as common land unit boundaries, but it does not include aerial photographs themselves."  Pl.'s MSJ Br. at 17–18.  But FMID failed to quote the first part of the sentence at issue, which specifies that geospatial information only "*includes*" the above-described information.  *See* Mem. from Boyd K. Rutherford, Ass't Sec'y for Admin., USDA, to Agency FOIA Officers (July 30, 2008), available at https://www.dm.usda.gov/foia/2008FCEA_Section1619.pdf.  Thus, the 2008 memorandum only

shows that the agency interpreted "geospatial information" to exclude aerial photographs, standing alone.[2]

In the end, the contemporary dictionary definitions and OMB supplemental guidance all teach that "geospatial information" is a broad term that includes information referring to a specific physical location on Earth.  Indeed, the parties do not propose definitions to the contrary. *See* Pl.'s MSJ Br. at 20 (term "must include data or information that is linked with or mapped to a specific geographic location"); Def.'s MSJ Br. at 10–11 (reciting Geospatial Data Act of 2018 definition).  And the handful of cases to interpret the term in the context of Section 8791 are in accord.  *See, e.g., Ctr. For Biological Diversity v. U.S. Dep't of Agric.*, 626 F.3d 1113, 1116 (9th Cir. 2010) (term includes GPS coordinates); *Audubon Soc. Of Portland v. U.S. Natural Res. Conservation Serv.*, 841 F. Supp. 2d 1182, 1187–88 (D. Or. 2012) (term includes GPS coordinates, annotated maps, and aerial photographs).

---

[2] FMID also cites two other statutes that define "geospatial information."  The organic act for the National Geospatial-Intelligence Agency—also cited by USDA—defines the term as "[i]nformation that identifies the geographic location and characteristics of natural or constructed features and boundaries on the earth and includes (A) statistical data and information derived from, among other things, remote sensing, mapping, and surveying technologies; and (B) mapping, charting, geodetic data, and related products."  10 U.S.C. § 467(4).  The second statute, the Geospatial Data Act of 2018, 43 U.S.C. § 2801 *et seq.*, defines "geospatial data" as (A) "information that is tied to a location on the Earth, including by identifying the geographic location and characteristics of natural or constructed features and boundaries on the Earth, and that is generally represented in vector datasets by points, lines, polygons, or other complex geographic features or phenomena; (B) may be derived from, among other things, remote sensing, mapping, and surveying technologies; (C) includes images and raster datasets, aerial photographs, and other forms of geospatial data or datasets in digitized or non-digitized form; and (D) does not include [certain Indian tribe and national security data]."  43 U.S.C. § 2801. While those definitions define the term for the purposes of their respective chapters, *see id.* (limiting definition to Tit. 43 ch. 46); 10 U.S.C. § 467 (limiting definition to Tit. 10 ch. 22), they are not authoritative definitions for the term as used in Section 8791.  *See United States v. E-Gold, Ltd.*, 550 F. Supp. 2d 82, 92 (D.D.C. 2008) ("[I]f a word is defined to mean something particular 'in this section,' then it will be given that definition only in that section.") (cleaned up) (quoting Linda D. Jellum & David Charles Hricik, *Modern Statutory Interpretation: Problems, Theories, and Lawyering Strategies* 137 (2006)).

Applying this definition, Farm and Tract Numbers are geospatial information.  Like GPS coordinates, they refer to specific physical locations; in this case, they refer to polygons representing physical boundaries of plots of land on Earth.  FMID argues that, because the numbers are "simply alpha-numerical codes that the USDA creates and assigns," they are not geospatial information.  Pl.'s MSJ Br. at 17.  But *any* system of identifying specific geographic locations—including, for example, GPS coordinates—must ultimately be designed and implemented by someone.  The Court holds that USDA properly invoked Exemption 3 to withhold the Farm and Tract Numbers.

### 2.    Customer Numbers – Exemption 6

Exemption 6 provides that agencies may withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  Courts follow a two-step process when considering withholdings or redactions under Exemption 6.  First, they "determine whether the [records] are personnel, medical, or 'similar' files covered by Exemption 6."  *Multi AG Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1228 (D.C. Cir. 2008).  The phrase "similar files" includes all information that "applies to a particular individual."  *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 599–602 (1982).  If the records are medical, personnel, or similar files, courts "determine whether their disclosure 'would constitute a clearly unwarranted invasion of personal privacy.'"  *Multi AG Media*, 515 F.3d at 1228 (quoting 5 U.S.C. § 552(b)(6)).

In making the latter determination, courts must "balance the public interest in disclosure against the interest Congress intended [Exemption 6] to protect."  *Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495 (1994) (quoting *Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 776 (1989)).  This involves a second two-step process.  Courts first determine whether disclosure "would compromise a substantial, as opposed to a *de minimis*,

privacy interest." *Norton*, 309 F.3d at 33 (quoting *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989)).  If the interest is substantial, they "weigh that interest against the public interest in the release of the records." *Id.* (internal quotation marks omitted) (quoting *Horner*, 879 F.2d at 874).

As the requester, FMID "bears the burden of identifying an overriding public interest and demonstrating that disclosure would further that interest." *Stein v. C.I.A.*, 454 F. Supp. 3d 1, 19 (D.D.C. 2020) (citation omitted).  The "only relevant 'public interest in disclosure' to be weighed in this balance is the extent to which disclosure would serve the 'core purpose of the FOIA,' which is 'contribut[ing] significantly to public understanding *of the operations or activities of the government*.'" *Fed. Labor Relations Auth.*, 510 U.S. at 495 (alteration and emphasis in original) (quoting *Reporters Comm.*, 489 U.S. at 775).

The requester "must show that the public interest sought to be advanced is a significant one" and "the information is likely to advance that interest." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004) (describing Exemption 7 public interest balancing test); *see also Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993) (Exemption 7 test "is applicable in the case of Exemption 6").  Courts must "focus not on the general public interest in the subject matter of the FOIA request, but rather on the incremental value of the specific information being withheld." *Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 661 (D.C. Cir. 2003).  In the D.C. Circuit, when engaging in Exemption 6 balancing, the court "takes derivative uses into account in evaluating the impact of disclosure on the public interest" and does the same "in evaluating the impact of disclosure on personal privacy." *Am. Civil Liberties Union v. U.S. Dep't of Justice*, 655 F.3d 1, 15 (D.C. Cir. 2011).

Thus, the Court proceeds to the first step, determining whether Customer Numbers are "similar files" under the statute.  Exemption 6 was "intended to cover detailed Government records on an individual which can be identified as applying to that individual."  *Dep't of State*, 456 U.S. at 602 (quoting H.R. Rep. No. 1497, 89th Cong., 2d Sess., 11 (1966), U.S. Code Cong. & Admin. News 1966, pp. 2418, 2428).  There is no dispute that Customer Numbers apply to individuals or entities that have a record in USDA databases.  Pl.'s Stmt. Facts ¶ 5.  Moreover, USDA has shown that, with the aid of publicly-available information, the public can connect Customer Numbers to those individuals or entities and reveal their personal information.  Def.'s Stmt. Facts ¶¶ 27, 28, 30, 34, 37.  USDA explains that each Customer Number functions as "a key that connects a particular individual to other data in the public domain."  *Id.* ¶ 34.  That data may contain a farm's "address, legal description, or [its] latitude and longitude."  *Id.* ¶ 28.  These records also include "USDA-sourced maps marked with farm and tract numbers and other official documents identifying acreage of the agricultural operation, crop types, legal descriptions and other identifying information."  *Id*.  The D.C. Circuit has noted that, "in the absence of any conflicting evidence, we give some credence to the agency's familiarity with whether a disclosure would lead to identification of the individuals in question."  *Canning v. U.S. Dep't of State*, 134 F. Supp. 3d 490, 515 (D.D.C. 2015) (quoting *Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 391–92 (D.C. Cir. 1987) (internal quotation marks omitted)).  And FMID has neither disputed USDA's representations or "presented evidence suggesting that [disclosing Customer Numbers] would not identify those individuals."  *Id.* (quoting *Carter*, 830 F.2d at 391–92) (internal quotation marks omitted).  Thus, because tying Customer Numbers to these public records can reveal the above information, including "at least a portion of the [farm] owner's personal finances," the Court finds that they are "similar files" for the purposes of

Exemption 6.  *Multi AG Media*, 515 F.3d at 1229 (quoting *Nat'l Parks & Conservation Ass'n v. Kleppe*, 547 F.2d 673, 685 (D.C. Cir. 1976)).[3]

The second step is determining whether the Customer Numbers implicate a greater than *de minimis* privacy interest.  For reasons largely already explained, they do.  USDA represents that Customer Numbers can be connected to publicly available data to form a "comprehensive picture" of the associated businesses.  Def.'s Stmt. Facts ¶ 30.  And in *Multi AG Media*, the D.C. Circuit recognized that disclosing the data requested in that case could "allow for an inference to be drawn about the financial situation of an individual farmer" which implicated a greater than *de minimis* privacy interest.  515 F.3d at 1230.  True, the Customer Numbers by themselves— unlike the information at issue in *Multi AG Media*—disclose nothing about an individual farmer to the public, including the farmer's identity.  Nor do the numbers contain information that allows for a direct inference about different farmers' finances.  But the disclosure of the numbers, when combined with other public data, could lead to identification of individual farmers and reveal information about their farms and financial status.  Def.'s Stmt. Facts ¶¶ 27, 28, 30, 34, 37.  For this reason, Customer Numbers implicate a privacy interest under Exemption 6.  *See Multi AG Media*, 515 F.3d at 1230; *see also Horner*, 879 F.2d at 878 ("Where there is a substantial probability that disclosure will cause an interference with personal privacy, it matters not that there may be two or three links in the causal chain.").

Under the third step, the Court must balance the asserted privacy interest against the public's interest in disclosure of the information.  FMID maintains that disclosing Customer

---

[3] The Customer Numbers are "similar files" even when they apply to entities, as opposed to individuals, because "most farming operations are closely held family businesses," Buchan Decl. ¶ 19, and revealing information about an entity would disclose information about the entity's owner or owners.  *See Multi AG Media*, 515 F.3d at 1228–29 (holding same).

Numbers, Farm Numbers, and Tract Numbers would allow the public to monitor how USDA is administering its farm programs in two ways.  Pl.'s MSJ Br. at 26.  First, disclosing the information would let the public determine whether USDA is overpaying program participants, and help root out possible fraud.  FMID claims that some farmers are collecting extra payments through a "scheme of dividing their lands and transferring them to family members, family corporate entities, or other third parties."  *Id.*  Obtaining this data, FMID asserts, would help the public determine whether USDA administers its payment caps properly.  *Id.*  Second, FMID argues that disclosing the information allows the public to determine whether farmers are complying with USDA program requirements.  *Id.* at 27.  In other words, its first argument focuses on the public benefit from learning if USDA is inadvertently paying farmers more than subsidy programs allow, thus revealing how well USDA is administering its programs; its second argument relates to the public benefit in learning whether the farmers themselves are adhering to program requirements.  Neither succeeds in outweighing USDA's asserted privacy interest.

FMID's first public interest justification fails for two reasons.  First, FMID asserts that, "[w]ithout [the Farm, Tract, and Customer Numbers], the USDA (or the public) has no ability to determine how well the USDA is administering any farm programs."  *Id.* at 26.  But the Court has already held that Farm and Tract Numbers are excepted from disclosure under Exemption 3 because they are geospatial information.  FMID does not explain how releasing only Customer Numbers could inform the public about USDA's program administration; all its examples rely on the release of all three numbers together.[4]  Pl.'s MSJ Br. at 27–28.

---

[4] The record sheds no light on this issue either.  For example, USDA represents, and FMID concedes, that the Customer Number "has nothing to do" with and "is not used" in the records FMID requested in Request 1467.  Def.'s Stmt. Facts ¶ 2.  And the business relationship information sought by Request 1497 is not revealed "by linking Parent and Member Customer

Second, there is no evidence in the record to support FMID's allegations of fraud in USDA programs. And baseless allegations of fraud do not support finding a public interest for purposes of Exemption 6 disclosure. *Consumers' Checkbook Ctr. for the Study of Servs. v. U.S. Dep't of Health & Human Servs.*, 554 F.3d 1046, 1054 (D.C. Cir. 2009). In *Consumers' Checkbook*, the requester sought Medicare claims data linked to individual physicians that, in its view, would reveal information about the Department of Health and Human Services' "ability to root out Medicare fraud and waste." *Id.* at 1050–51. The D.C. Circuit rejected the requester's argument because its claims of fraud were unsupported by any evidence, observing that "if an unsupported suggestion that an agency may be distributing federal funds to a fraudulent claimant justifies disclosure of private information, the agency would have no defense against FOIA requests for release of private information." *Id.* at 1054. FMID makes the same ill-fated argument here. FMID claims the public interest supports disclosure because the information FMID seeks would reveal "whether the USDA is administering [] payment caps properly." Pl.'s MSJ Br. at 26. Like its failure to provide an explanation of how the public may use Customer Numbers alone to uncover this fraud, FMID fails to provide "a scintilla of evidence" to support its claim that USDA is overpaying program participants in the ways it suggests. *Consumers' Checkbook*, 554 F.3d at 1054 (quoting *Ray*, 502 U.S. at 179).

---

Numbers, but by linking Parent and Member Tax-ID numbers or Parent and Member CCIDs." *Id.* ¶ 8. The Farm Producer File at issue in Request 3020 illustrates the extent of this problem for FMID. That file "links the producer's Customer Number to Farm Numbers, and that combination forms the basis for program payments." Pl.'s Stmt. Facts ¶ 71. But without the Farm Numbers, the Customer Numbers cannot provide that information. Therefore, no incremental public interest exists in adding the Customer Numbers to the Farm Producer Statistical File USDA already produced. Def.'s Stmt. Facts ¶ 18.

FMID's repeated invocation of *Multi AG Media* does not save its argument.  In that case, there was a public interest in "look[ing] at the information the agency had before it when determining whether a particular farm is eligible to participate in the benefit programs in the first place so that the public can monitor whether the agency is correctly doing its job." *Consumers' Checkbook*, 554 F.3d at 1055 (quoting *Multi AG Media*, 515 F.3d at 1231) (alterations omitted). Apart from misciting the plaintiff's argument in that case as the court's holding, *see* Pl.'s MSJ Br. at 25 (quoting *Multi AG Media*, 515 F.3d at 1231), FMID does not argue that the information revealed by disclosing only the Customer Numbers—without the Farm and Tract Numbers— says anything about how USDA determines "whether a particular farm is eligible to participate in the benefit programs in the first place." *Multi AG Media*, 515 F.3d at 1231.  Nor does FMID argue that disclosing the Customer Numbers will reveal how USDA uses them. *See id.* at 1231– 32 (recognizing public interest in learning how USDA used requested information); *see also Norton*, 309 F.3d at 36 (recognizing public interest in how "the Secretary and the FWS are using [program] information.").  At bottom, FMID has not demonstrated a similar benefit to the public in disclosing only Customer Numbers as the plaintiff did for the records at issue in *Multi AG Media.*

FMID's second argument is that there is a public interest in disclosure of Customer Numbers to assist the public in determining whether farmers are complying with program requirements.  This argument fares no better than its first.  The purpose of FOIA is to shed light on what the *government* is up to. *Reporters Comm.*, 489 U.S. at 773.  That purpose is distinct from this asserted public interest in disclosure, which is to shed light on what USDA program *participants* are up to.  The D.C. Circuit rejected a similar argument in *Painting & Drywall Work Preservation Fund, Inc. v. Dep't of Housing & Urban Development*, 936 F.2d 1300 (D.C. Cir.

1991).  There, a nonprofit requested certified payroll records from the Department of Housing and Urban Development to monitor federal contractors' compliance with federal labor laws.  *Id.* at 1301.  The records contained names, social security numbers, and addresses of individual employees.  *Id.*  The court held that, because "information that might reveal the failure of contractors to comply with relevant laws does not in itself cast light on what [the agency] is up to, [there is] no obvious public interest in its disclosure that is relevant to [the Exemption 6] analysis."  *Id.* at 1303 (citing *Reporters Comm.*, 489 U.S. at 774–75).  The same principle applies here.  "[U]nless the public would learn something directly about the workings of the *Government* by knowing [Customer Numbers], their disclosure is not affected with the public interest."  *Horner*, 879 F.2d at 879.  Knowing how "farmers are using their land," Pl.'s MSJ Br. at 28, or whether they are "accurately reporting data to qualify" for benefits, *id.*, does not directly shed light on USDA's operations or activities.  And even if there is a general public interest in revealing USDA program participant conduct, "that interest falls outside the ambit of the public interest that the FOIA was enacted to serve."  *Reporters Comm.*, 489 U.S. at 774–75.

It is possible that Customer Numbers could benefit the public by revealing information about program participants combined with already publicly available information.  *See Ray*, 502 U.S. at 181 (Scalia, J. concurring in part) (derivative use analysis must apply equally when weighing personal-privacy and public-benefits of disclosure).  FMID, however, makes no argument that such retroactive matching would serve the public interest.  And when analyzing an agency's invocation of Exemption 6, a court "need not linger over the balance; something, even a modest privacy interest, outweighs nothing every time."  *Horner*, 879 F.2d at 879.

For all these reasons, disclosure of the Customer Numbers "'would constitute a clearly unwarranted invasion of personal privacy.'" *Multi AG Media*, 515 F.3d at 1228 (quoting 5 U.S.C. § 552(b)(6)).  Thus, USDA may withhold them under Exemption 6.

**B.      FMID's Policy or Practice Claim (Count II)**

FMID also seeks declaratory and injunctive relief to remedy what it identifies as USDA's "policy and practice of failing to substantially comply with the FOIA's mandatory deadline requirements."  Pl.'s MSJ Br. at 32.  In seeking this relief, FMID requests that the court enter a nationwide injunction requiring USDA to substantially comply with FOIA deadlines nationwide. *Id.*  To support its request, FMID points to USDA's failure to adhere to FOIA's twenty working-day response timeline, *id.* at 30–31; 5 U.S.C. § 552(a)(6)(A)(i), and USDA's failure to adjudicate FMID's administrative appeal within the time specified by USDA regulations and FOIA.  Pl.'s MSJ Br. at 31.  FMID also cites USDA's total FOIA and administrative appeal backlog as justification for entering a nationwide injunction.  *Id.* at 31–32.  For the reasons explained below, FMID does not have standing to pursue its policy or practice claim.

Federal courts have an "independent obligation to assure themselves of jurisdiction, even where the parties fail to challenge it."  *Mendoza v. Perez*, 754 F.3d 1002, 1018 (D.C. Cir. 2014). And it "is equally well established that Article III standing is a prerequisite to federal court jurisdiction."  *Am. Library Ass'n v. F.C.C.*, 401 F.3d 489, 492 (D.C. Cir. 2005).  The standing requirement, "rooted in the traditional understanding of a case or controversy" as described in Article III of the Constitution, "serves to prevent the judicial process from being used to usurp the powers of the political branches and confines the federal courts to a properly judicial role." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (cleaned up).  "That the merits of a particular claim may be clear is no reason to avoid the constitutionally required inquiry into this limit on . . . jurisdiction."  *Dominguez v. UAL Corp.*, 666 F.3d 1359, 1362 (D.C. Cir. 2012).

To establish Article III standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S. Ct. at 1547.  "Having documents improperly withheld in response to a FOIA request is a well-established cognizable injury.  But because a plaintiff must have standing for each remedy sought, a plaintiff seeking prospective relief like an injunction or declaration striking down an agency's FOIA policy must be able to point to an imminent future injury—one that is certainly impending or has a substantial risk of occurring." *Frank LLP v. C.F.P.B.*, 288 F. Supp. 3d 46, 58 (D.D.C. 2017) (cleaned up).

FMID's primary problem establishing standing on its policy or practice claim is quite basic: it has not established the existence of an unlawful policy or practice.  A plaintiff seeking prospective relief from an alleged government policy must first establish "the existence of the challenged policy." *Haase v. Sessions*, 835 F.2d 902, 910 (D.C. Cir. 1987).  And "more than a nebulous assertion of the existence of a 'policy' is required to establish standing." *Id.* at 911.  Here, FMID bases its policy or practice claim on "missed deadlines alone." *Am. Ctr. for Law & Justice v. FBI*, No. 19-cv-2643, 2020 WL 3605624, at *5 (D.D.C. July 2, 2020) (rejecting similar claim).  It alleges that USDA has "systemically and repeatedly failed—in this case and others— to make a good faith effort to comply with the Congressional deadlines mandated by the FOIA." Compl. ¶ 73.  In its briefing, it claims that USDA disregarded FOIA deadlines in its initial responses to FMID's requests and that its administrative appeal is long past the deadline set by USDA regulations and FOIA itself.  Pl.'s MSJ Br. at 30–31.  But as explained below, there is very little here to "signal the agency has a policy or practice of ignoring FOIA's requirements." *Judicial Watch*, *Inc. v. United States Dep't of Homeland Sec.*, 895 F.3d 770, 780 (D.C. Cir. 2018).

To begin with, there is scant evidence that USDA ignored FOIA's deadlines in this case, at least as far as its responses to FMID's FOIA requests go.  In fact, the record tells the opposite story.  USDA met FOIA's deadlines in processing at least five out of the seven requests FMID submitted to the agency, and FMID's claims to the contrary overlook its own obligations under FOIA.  Under the FOIA statute and then-existing USDA regulations, FMID's requests were not "perfected" until USDA received 50% prepayment for requests that would incur over $250 in search costs or, in cases where the costs were less than $250, until FMID affirmed it would pay search fees on the back end.  5 U.S.C. § 552(a)(3)(A); 7 C.F.R. § 1.15(c), App'x A § 8(c) (2019); *CREW v. Fed. Election Comm'n*, 711 F.3d 180, 185 n.3 (D.C. Cir. 2013) (FOIA deadlines "apply only once an agency has received a proper FOIA request" that complies with "the agency's schedule of fees.").  FMID perfected two of its five December requests in late January 2019. ECF No. 9-3 ("Horst Decl."), Ex. 4; Buchan Decl., Ex. 9.  USDA gave notice that it required a time extension to complete processing those requests and issued its responses within FOIA's extended thirty-day deadline.  Horst Decl., Ex. 4; Buchan Decl., Ex. 9.; s*ee also* 5 U.S.C. § 552(a)(6)(B)(i), (iii)(II); *CREW*, 711 F.3d at 184 ("[A]n agency may extend the time limit to up to 30 working days by written notice to the requester.").  FMID perfected two other December 2018 requests in March 2019.  Buchan Decl. Exs., 4, 11.  USDA responded to those requests within the typical twenty-day deadline.  Buchan Decl. Exs., 4, 11.  The record does not reveal when FMID perfected the fifth request, but USDA's response to that request is contemporaneous with its responses to the other requests FMID perfected around that time.  Horst Decl., Ex. 10; Buchan Decl., Ex. 13.  Finally, the record also does not show when FMID perfected its March 2019 requests.  Buchan Decl. Exs., 15, 17.  Though USDA was certainly timely in responding to FMID's first request—doing so within a week—it was potentially a few days late in responding

to FMID's second request, assuming FMID perfected the request immediately.  Buchan Decl.

Exs., 15, 17.  Thus, taken as a whole, USDA's responsiveness "undermines the contention that

[USDA] is engaged in a persistent practice" of unlawful delay, *Am. Ctr.*, 2020 WL 3605624, at

*5, and belies any claim that it has a policy or practice of systematically ignoring FOIA's

requirements.

FMID relies on *Judicial Watch, Inc. v. United States Dep't of Homeland Security*, 895

F.3d 770 (D.C. Cir. 2018) to support its policy-or-practice claim, but the record here is quite

different than the one before the D.C. Circuit in that case.  There, the D.C. Circuit concluded that

the Secret Service had adopted a practice of delay because it "repeatedly [stood] mute over a

prolonged period of time and us[ed] Judicial Watch's filing of a lawsuit as an organizing tool for

setting its response priorities."  895 F.3d at 780–81.  USDA has not engaged in similar conduct

here.  Unlike the Secret Service in *Judicial Watch*, USDA responded to FMID's requests before

it filed suit, as opposed to waiting until afterward.  895 F.3d at 779.  And there is no indication

that USDA is using the "filing of a lawsuit as an organizing tool for setting its response

priorities."  *Id.* at 781.  Indeed, USDA's organizing principle processing FOIA requests and

appeals is to do so on a "first-in, first-out basis."  *See, e.g.*, Buchan Decl. Ex. 4; Horst Decl., Ex.

22; *see also* 7 C.F.R. § 1.8 (2019) ("[P]rocessing within each track shall be based on a first-in,

first-out concept, and rank-ordered by the date of receipt of the request.").

USDA's handling of FMID's Request 1467 exemplifies its responsiveness and good faith

efforts.  During the relevant time period, when USDA received a request implicating more than

$250 in search costs, USDA gave the requester twenty days to affirm they would prepay 50% of

the agency's search fees.  *See, e.g.*, Buchan Decl. Ex. 4.  If the requester did not respond within

those twenty days, USDA closed their request.  *Id.*  Here, USDA transmitted its fee request to

FMID on December 19, 2018, FMID did not respond to the fee request and so USDA closed the request.  *Id.*  But in early February 2019, FMID inquired about the request's status, and USDA responded within the hour.  *Id.*  FMID—asserting that it had never received the fee request— asked USDA if it would reopen the FOIA request, and less than fifteen minutes later, USDA agreed and sent a new fee request.  *Id.*  And the next month, USDA issued its timely response to Request 1467.  *Id.*  USDA even refunded FMID its fee payment for Request 1467 and two other "complex" requests "due to the delay from the recent lapse in Federal funding and substantial changes in the way [the agency] process[es] FOIA requests."  Buchan Decl., Exs. 3, 11, 13.  This is hardly the behavior of an agency dodging its duties under FOIA.

To be sure, USDA missed the statutory deadline to process FMID's administrative appeals.  FOIA requires that agencies adjudicate an appeal within twenty working days.  5 U.S.C. § 552(a)(6)(A)(ii).  USDA received FMID's appeals on May 12, 2019, and was required to issue its determinations by June 10, 2019.  By the time FMID filed suit on August 6, 2019, sixty working days had passed since USDA received the appeals.  USDA offers no justification for this delay.  But even so, USDA actively responded to FMID's inquiries after FMID filed the appeal.  Horst Decl., Exs. 22–24.  And USDA FOIA agents corresponded with FMID by email and by telephone on multiple occasions.  Horst Decl., Exs. 22–24.  When the FOIA agent assigned to FMID's appeal was out of the office for two weeks, another agent stepped in to assist in responding to FMID's inquiries.  Horst Decl., Ex. 23.  Again, USDA's behavior is a far cry from the "virtually complete passivity" alleged in *Judicial Watch*, 895 F.3d at 785 (Pillard, J. concurring).

Looking at USDA's record of meeting its FOIA obligations more broadly, its record is far from perfect, and this case illustrates the potential "difficulty that FOIA requests pose for

executive and independent agencies." *CREW*, 711 F.3d at 189.  Philip Buchan, a USDA

Government Information Specialist who oversees the USDA Farm Services Agency (FSA) FOIA

branch that responded to FMID's requests, asserts that the FSA branch processes "simple

requests on average in 4.25 days, with a median response time of one day."  ECF No. 13-4

("Second Buchan Decl.") ¶ 15.  The branch processes "complex requests on average in 28.57

days, with a median of eleven days."  *Id.*  The branch processed 263 complex requests in Fiscal

Year 2019, of which 218 were processed within forty working days.  *Id.*  Buchan explains that

FOIA litigation cases, personnel departures, and resource constraints limit his branch's ability to

cure its FOIA backlog but that the branch has made substantial progress in the past few years.

*Id.* ¶¶ 10–36.[5]  But "if the speed of replying to requests in any agency is not satisfactory to

Congress [or FOIA requesters], and the obvious cause is a lack of available resources . . . the

equally obvious remedy is for Congress to supply the necessary resources and to designate their

use for FOIA purposes."  *Open Am. v. Watergate Special Prosecution Force*, 547 F.2d 605, 615

n.17 (D.C. Cir. 1976).  This is not meant to "endorse or excuse . . . alleged noncompliance," *Am.*

*Ctr.*, 2020 WL 3605624, at *5, but in the Court's view, without a policy or practice to frame

FMID's future risk of injury, exercising jurisdiction over this claim would turn the judicially-

created FOIA policy-or-practice claim—intended to bypass mootness—into a mechanism to

micromanage agency FOIA offices.

  In sum, the record does not "evidence[] a policy or practice of delayed disclosure" by

USDA.  *Payne Enters., Inc. v. U.S.*, 837 F.2d 486, 491 (D.C. Cir. 1988).  USDA appears to have

---

[5] In addition, consistent with its delay in this case, USDA's record with processing
administrative appeals leaves much to be desired.  Buchan admits that, in fiscal year 2019, it
took his branch an average of 342 days to process an appeal and it only processed three appeals.
Second Buchan Decl. ¶¶ 25–26.

substantially complied with FOIA's deadlines in this case, with the exception of FMID's administrative appeal, which, as explained below, in any event cannot be a source of injury for FMID because the Court has held that the Farm, Tract, and Customer Numbers are exempt from disclosure.  And merely that USDA has an administrative appeal backlog is not enough to show a policy or practice of unlawful delay.  Thus, FMID identifies no policy or practice that threatens it with future injury.

In addition, even assuming that FMID could establish a policy or practice of unlawful delay on this record, it has not shown that it will likely suffer an injury in the future as a result of that policy, as Article III standing requires, *Tipograph v. Dep't of Justice*, 146 F. Supp. 3d 169, 174–77 (D.D.C. 2015) (discussing policy or practice standing requirements).  For starters, FMID cannot base any injury on USDA's failure to timely respond to its requests relating to the Farm, Tract, and Customer Numbers, or to adjudicate its administrative appeal about those records. "D.C. Circuit cases considering FOIA policy or practice claims have all involved an agency practice that impaired or frustrated the plaintiff's prompt access to *nonexempt* agency records. The injury that each injunction or order sought to remedy was an agency's failure to release *nonexempt* records in a timely manner."  *NRDC v. U.S. E.P.A.*, 383 F. Supp. 3d 1, 13 (D.D.C. 2019) (emphasis added).  But the Court has held that FMID is not entitled to the Farm, Tract, and Customer Numbers because they need not be disclosed under Exemptions 3 and 6.  In other words, as far those records are concerned, FMID "has not demonstrated that the agency has been withholding information that it should be disclosing."  *Cause of Action Inst. v. U.S. Dep't of Justice*, 453 F. Supp. 3d 368, 379 (D.D.C. 2020).  Thus, they cannot be the basis for any purported future injury.  *Id.* (no standing to bring policy or practice claim where "defendant appropriately withheld information as non-responsive records").

Moreover, "where a plaintiff 'seeks prospective declaratory and injunctive relief, he must establish an ongoing or future injury that is 'certainly impending'; he may not rest on past injury.'" *Williams v. Lew*, 819 F.3d 466, 472 (D.C. Cir. 2016) (quoting *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015)).  And as far as the *non-exempt* records without Farm, Tract, and Customer Numbers that FMID requested and received are concerned, Pl.'s MSJ Br. at 30–31, FMID has failed to assert that it will continue to request them in the future.  To be sure, FMID represents that it, "among other things, collects, maintains, and analyzes agricultural data from a number of sources, including the federal government," Pl.'s Stmt. Facts ¶ 1; that "[a]s part of its core research, [it] has for over a decade regularly submitted requests for USDA records pursuant to the FOIA," *id.* ¶ 2; and that it "has submitted annual requests for records containing Customer Numbers, Farm Numbers, and Tract Numbers since before 2009," *id.* ¶ 9.  But FMID never alleges that it will continue requesting the records it was provided or asserts that it will suffer future injury from a delay in USDA's response to those hypothetical requests.  *See* Compl. ¶¶ 1–69, 70–75; Pl.'s MSJ Br. at 29–32; Pl.'s Opp'n at 18–23.

## C.    APA Claim (Count III)

As to Count III, FMID originally sought a declaratory judgment holding the applicable administrative appeal deadline contrary to FOIA.  Pl.'s MSJ Br. at 33–35.  But FMID noted that, if USDA did not raise the regulation as an affirmative defense, its claim would be moot for lack of threatened injury.  Pl.'s Opp'n at 25.  USDA is not using the regulation as an affirmative defense and agrees that FMID's claim is therefore moot.  Def.'s Reply at 8.  Whether the claim is more appropriately described as moot or deficient for lack of injury is of little consequence because FMID submits that the "Court need not issue a merits decision on the APA claim."  Pl.'s Opp'n at 25.  The Court will therefore dismiss Count III for lack of subject matter jurisdiction.

**IV.     Conclusion**

For all these reasons, Defendant's Motion for Summary Judgment, ECF No. 13, will be granted in part as to Count I, and Plaintiff's Motion, ECF No. 9, will be denied.  The Court will dismiss Counts II and III for lack of subject matter jurisdiction because FMID does not have standing to pursue them.  A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: November 27, 2020